UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERIK WHITE,

                              Plaintiff,

    -against-                                            9:21-CV-0791 (LEK/TWD)

T. MIELNICKI, et al.,

                              Defendants.
_____

**DECISION AND ORDER**

**I.    INTRODUCTION**

On or about July 12, 2021, pro se Plaintiff Erik White, a former New York State Department of Corrections and Community Supervision ("DOCCS") inmate, commenced this action with the filing of a complaint, accompanied by an application to proceed in the action in forma pauperis ("IFP"). Dkt. Nos. 1–2. On September 9, 2021, the Court issued a Decision and Order granting Plaintiff's IFP application and accepting the complaint for filing only to the extent it asserted constitutional violations arising under the Fifth and Fourteenth Amendments against three individual defendants. See Dkt. No. 4 ("September Order"). Following service of process on those three defendants, but before they filed a response to the original complaint, Plaintiff filed an amended complaint. Dkt. No. 12 ("Amended Complaint"). The Clerk has now forwarded to the Court Plaintiff's Amended Complaint for review under 28 U.S.C. § 1915 ("Section 1915").

**II.    DISCUSSION**

    **A.    Governing Legal Standard**

The legal standard governing the Court's review of a pleading pursuant to Section 1915 was discussed at length in the September Order and will not be restated in this Decision and Order. See September Order at 2–3.

### B.  Summary of the Amended Complaint

While Plaintiff was confined in DOCCS custody, he was required to participate in the Sex Offender Counseling and Treatment Program ("SOCTP"). Am. Compl. at 5. The SOCTP is governed by the New York State Office of Mental Health ("OMH"). Id. Plaintiff was enrolled in the SOCTP while he was confined in Mid-State Correctional Facility ("Mid-State C.F."). Id.

To successfully complete the SOCTP, participants must admit responsibility in writing and in group sessions for the crimes of which they were convicted. Am. Compl. at 5–6. According to Plaintiff, if a participant in the program refuses to take responsibility, he is negatively removed from the program, "his good-time is rescinded, and his release from incarceration denied until he either complies with the program's dictate, or [he reaches] his maximum release date." Id. at 6. Although Defendant Social Worker T. Mielnicki knew that Plaintiff had professed his innocence to the crimes of which he was convicted and knew that Plaintiff had an appeal pending challenging his criminal convictions, Mielnicki nevertheless required Plaintiff take responsibility for his crimes as part of the SOCTP. Id.

On or about February 14, 2020, Defendant Mid-State C.F. Assistant Deputy Superintendent of Programs M. Debraccio informed Plaintiff that his "good time would be rescinded until [he] complete[d] the S.O.C.T.P.," which meant that Plaintiff would "not be released on [his], then, upcoming conditional release . . . date, June 13th, 2020, unless [he] finished the program in time." Am. Compl. at 7. Defendant Mid-State C.F. Deputy Superintendent of Programs T. Kozak "supported/affirmed" Defendant Debraccio's rescission of

Plaintiff's good time credits. Id. "Thereafter, Debraccio's decision [was] then also . . . affirmed by [defendant Mid-State C.F. Superintendent] William Fennessy." Id. The matter was then "forwarded to the [DOCCS] Central Office[, where] it was reviewed by [defendant] Jeff McKoy, [DOCCS] Deputy Commissioner of Programs, and [defendant] Anthony J. Annucci, Acting [DOCCS] Commissioner." Id. at 8. Debraccio's decision was "supported, affirmed and finalized by . . . McKoy and Annucci" on September 7, 2020. Id. at 9.

Soon after Plaintiff's good time credit was rescinded, the pandemic shut down all prison programs, and Plaintiff was unable to complete the SOCTP in time to meet his conditional release date. Am. Compl. at 10.

On or about June 26, 2020, Plaintiff had a meeting with Defendant Mielnicki and Defendant Senior Counselor T. Davis. Am. Compl. at 10. They informed Plaintiff that he was "on probation for 30 days," during which time Plaintiff was provided the opportunity to "accept responsibility for [his] alleged offense(s)." Id. Plaintiff was told that his failure to accept responsibility during the probationary period would result in his negative removal from the SOCTP and his "release from incarceration would be withheld until either [he] compl[ied] with the program's dictate, or [his] maximum release date from prison, whichever came first." Id. at 10–11. Plaintiff thereafter "reluctantly . . . took responsibility for the offense(s) charged against [him]," and his good time credit was reinstated and his "conditional release date [was] reset to Oct[ober] 19[], 2020." Id. at 11.

Plaintiff alleges that his statements provided in the SOCTP regarding his alleged crimes "are currently being used against [him]" in connection with his Article 10 proceeding.[1] Am. Compl. at 13.

In addition to the above-named defendants, the Amended Complaint names the New York State Attorney General and OMH as defendants. See Am. Compl. at 2–4, 14, 15.

Liberally construed, Plaintiff's Amended Complaint asserts violations of his constitutional rights arising under the Fifth and Fourteenth Amendments.[2] See generally Am. Compl. For a complete statement of Plaintiff's claims, reference is made to the Amended Complaint.

### C. Analysis

#### 1. *New York State Attorney General and OMH*

---

[1] As noted in the September Order, although plaintiff's criminal sentence expired in June 2021, he is now civilly confined pursuant to Article 10 of the New York Mental Hygiene Law, which governs, inter alia, sex offenders requiring inpatient commitment. See MHL § 10.01.

[2] Like the original complaint, the Amended Complaint also invokes the Eighth Amendment as a basis for his claims. See Am. Compl. at 11, 13–14. The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]'" Estelle v. Gamble, 429 U.S. 97, 102–03 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 100–01 (1958) and Gregg v. Georgia, 428 U.S. 153, 169–73 (1976) (citations omitted)). Even liberally construed, however, Plaintiff's Amended Complaint does not allege that he was subjected to cruel and unusual punishment under the Eighth Amendment. Instead, the focus of the amended pleading is that, by mandating he take responsibility for the underlying crimes of which he was convicted while enrolled in the SOCTP, Defendants forced him to violate his right against self-incrimination under the Fifth Amendment and/or that they violated his substantive due process rights under the Fifth and Fourteenth Amendments. Because the Court is obligated to "read the pleadings of a *pro se* plaintiff liberally and interpret them to 'raise the strongest arguments that they suggest,'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)), the Court has construed Plaintiff's Amended Complaint to assert claims arising under only the Fifth and Fourteenth Amendments.

As explained in the September Order, the Eleventh Amendment bars individuals from suing states in federal court, unless Congress abrogates states' immunity or a state consents to suit. See U.S.Const. Amend. XI; Gollomp v. Spitzer, 568 F.3d 355, 365–66 (2d Cir. 2009). Eleventh Amendment immunity in this case extends to arms of New York State, including the New York State Attorney General and OMH. See Smith v. United States, 554 F. App'x 30, 31 (2d Cir. 2013) (affirming dismissal of claims against the New York State Attorney General on sovereign immunity grounds); Komlosi v. New York State Office of Mental Retardation and Dev'l Disabilities, 64 F.3d 810, 815 (2d Cir. 1995) (applying Eleventh Amendment immunity to bar the plaintiff from suing the New York State Office of Mental Retardation and Developmental Disabilities). Accordingly, Plaintiff's claims asserted against the New York State Attorney General and OMH are dismissed pursuant to Section 1915(e)(2)(B)(i).

2. *Equal Protection Claims*

In addition to being barred by Eleventh Amendment immunity, Plaintiffs equal protection claims against the New York State Attorney General are dismissed for failure to state a claim for which relief may be granted. Plaintiff's Amended Complaint asserts an equal protection claim against the New York State Attorney General based on allegations that the Attorney General does not subject other criminals to "housing restrictions, civil management, nor otherwise" in the way she imposes treatment programs and civil management on sex offenders. Am. Compl. at 15. The Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

To state a cognizable equal protection cause of action, a plaintiff must allege sufficient facts that plausibly suggest he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. Giano v.

Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). Because convicted sex offenders do not comprise a suspect class for equal protection purposes, the state sex offender programs and civil management provisions are analyzed under the rational basis test. See Cutshall v. Sundquist, 193 F.3d 466, 482 (6th Cir. 1999). Courts in this circuit have concluded that New York's sex offender management programs and registration requirements survive this test. See, e.g., Medina v. Cuomo, No. 15-CV-1283, 2015 WL 13744627, at *15 (N.D.N.Y. Nov. 9, 2015), adopted by 2016 WL 756539 (N.D.N.Y. Feb. 25, 2016). Plaintiff's Amended Complaint in this case alleges no new facts that require modifying that conclusion. Accordingly, Plaintiff's equal protection claim against the New York Attorney General is also dismissed pursuant to Section 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

### 3. Remaining Claims

Mindful of the Court's obligation to liberally construe a pro se litigant's pleadings, see Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to Plaintiff's remaining Fifth and Fourteenth Amendment claims arising from allegations that Defendants Debraccio, Davis, Mielnicki, Kozak, Fennessy, McKoy, and Annucci compelled him to incriminate himself while enrolled in the SOCTP. In so ruling the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

## III.  Motion for Counsel

At the conclusion of Plaintiff's Amended Complaint, he includes a request that the Court appoint pro bono counsel to represent him in this action. Am. Compl. at 16. The statute that governs IFP proceedings provides, in relevant part, that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); see also Hodge v. Police

Officers, 802 F.2d 58, 61–62 (2d Cir. 1986). That section, however, does not require that counsel be appointed for every indigent civil litigant. Although the United States Constitution assures that indigent litigants have "meaningful access" to the courts, it does not guarantee that all such parties will receive the benefit of pro bono representation. Hodge, 802 F.2d at 60 (quoting Bounds v. Smith, 430 U.S. 817, 823 (1977)). Instead, section 1915(e) confers broad discretion on the courts to appoint counsel to deserving indigent litigants in appropriate circumstances. Hodge, 802 F.2d at 60–62.

While the appointment of counsel to represent indigent parties in civil suits is authorized by statute, when that authority is exercised, the Court is required to call upon attorneys to donate their time pro bono, to the benefit of indigent litigants and the Court. In deference to the limited resources available to the Court to serve the interests of the many indigent litigants who pursue claims before it, and recognizing the "thankless burden" associated with such assignments, Miller v. Pleasure, 296 F.2d 283, 285 (2d Cir. 1961), courts should not grant such applications indiscriminately, but instead must exercise sound judgment and restraint in doing so. Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 171–72 (2d Cir. 1989).

There is no bright line test to be applied when a pro se, indigent civil litigant seeks appointment of counsel. Hendricks v. Coughlin, 114 F.3d 390, 392–93 (2d Cir. 1997). The factors informing the decision of whether to exercise discretion in favor of appointing counsel were summarized by the Second Circuit in its decision in Hodge:

> In deciding whether to appoint counsel . . . , the district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal

>issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Hodge, 802 F.2d at 61–62. In weighing these factors, each case must be decided on its own merits. Velasquez v. O'Keefe, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing Hodge, 802 F.2d at 61). Of these criteria, the Second Circuit has "stressed the importance of the apparent merits of the indigent's claim." Cooper, 877 F.2d at 172. While a plaintiff need not demonstrate that he can win his case without the aid of counsel, he does have to show "likely merit." McDowell v. State of N.Y., No. 91-CV-2440, 1991 WL 177271, at *1 (S.D.N.Y. 1991).

Although, as discussed above, Plaintiff's Amended Complaint is accepted for filing, none of the Defendants have yet responded to that pleading. This action is in its earliest stages, and the threshold for surviving review under Section 1915 is minimal. The Court's finding that Plaintiff's Amended Complaint should be accepted for filing is hardly the product of a thorough analysis of the likely merits of the case. In light of the foregoing, Plaintiff's motion for the appointment of counsel is denied without prejudice.

## IV.   CONCLUSION

Accordingly, it is hereby:

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 12) is **ACCEPTED for filing** only to the extent that it asserts Fifth and Fourteenth Amendment claims against Defendants Mielnicki, Davis, Kozak, Debraccio, Fennesy, McKoy, and Annucci; and it is further

**ORDERED** that, except as to the foregoing, the remaining claims asserted in the Amended Complaint are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that, because there are no claims remaining in this action pending against the New York State Attorney General or OMH, the Clerk is respectfully directed to **TERMINATE** those defendants from the docket; and it is further

**ORDERED** that the Clerk shall issue summonses, along with copies of the Amended Complaint, to the United States Marshal Service for service upon Defendants Kozak, Fennessy, McKoy, and Annucci; and it is further

**ORDERED** that a response to the Amended Complaint shall be filed by Defendants Mielnicki, Davis, Kozak, Debraccio, Fennesy, McKoy, and Annucci, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that Plaintiff's motion for the appointment of pro bono counsel (Dkt. No. 12) is **DENIED without prejudice**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on the parties. **IT IS SO ORDERED.**

DATED:   November 19, 2021
         Albany, New York

LAWRENCE E. KAHN
United States District Judge