UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ERIK WHITE,

                Plaintiff,

   -against-                                      9:21-CV-791 (LEK/TWD)

TERRANCE MIELNICKI, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Erik White commenced this action pro se on July 12, 2021. Dkt. No. 1. Plaintiff later filed an amended complaint on October 12, 2021, requesting assistance of counsel and alleging violations under 42 U.S.C. § 1983 ("Section 1983") of his Fifth and Fourteenth Amendment rights at Mid-State Correctional Facility ("Mid-State C.F.") by defendants Terrance Mielnicki, T. Davis, T. Kozak, M. Debraccio, William Fennessy, Jeff McKoy, and Anthony J. Annucci ("Defendants"). Dkt. No. 12 ("Amended Complaint"). Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 19, 2022. Dkt. No. 24. On May 31, 2022, the Honorable Thérèse W. Dancks, United States Magistrate Judge, issued a report and recommendation recommending that Defendants' motion to dismiss for failure to state a claim be granted. Dkt. No. 31 ("Report-Recommendation").

Now before the Court is an amended report and recommendation issued by Judge Dancks on June 1, 2022, reaching the same conclusions as the May 31 Report-Recommendation. Dkt. No. 32 ("Amended Report-Recommendation"). Plaintiff filed objections to the Amended Report-

Recommendation on July 15, 2022. Dkt. No. 35 ("Objections"). For the reasons that follow, the Court rejects in part and approves in part the Amended Report-Recommendation.

## II. BACKGROUND

### A. Factual Allegations

Plaintiff's Amended Complaint stems from his participation in New York's Sex Offender Counseling and Treatment Program ("SOCTP"). Am. R&R at 1. Plaintiff brings Section 1983 Fifth Amendment compelled self-incrimination and Fourteenth Amendment due process claims against Social Worker Mielnicki, Senior Counselor Davis, Deputy Superintendent of Programs Kozak, Assistant Deputy Superintendent of Programs Debraccio, Superintendent Fennessy, Deputy Commissioner of Programs McKoy, and Acting Commissioner Annucci. Id. These allegations are detailed in the Amended Report-Recommendation, familiarity with which is assumed. Id. at 2.

### B. The Amended Report-Recommendation

After reviewing Plaintiff's Amended Complaint, Judge Dancks found in the Amended Report-Recommendation that Plaintiff's Fifth Amendment compelled self-incrimination claim should be dismissed for failure to state a claim upon which relief can be granted. Id. at 8. In particular, Judge Dancks found that, "Absent an allegation that [Plaintiff's] compelled statements were used against him in a criminal case, [Plaintiff] has failed to state a claim for a violation of his right to be free from compelled self-incrimination. Moreover, any contention that the statements [Plaintiff] made in the SOCTP might be used against him in a future criminal proceeding is not now ripe for adjudication." Id. (citations omitted). Judge Dancks thus recommended granting Defendants' motion to dismiss as it relates to Plaintiff's claim of compelled self-incrimination. Id. at 6.

Judge Dancks then turned to Plaintiff's Fourteenth Amendment due process claims. First, Judge Dancks dispensed with Plaintiff's procedural due process claim. Judge Dancks stated, "White's procedural due process claim fails because White concedes that before his good time credits were revoked, he had a hearing with the Time Allowance Committee ("T.A.C.") on February 14, 2020." Id. at 9. Additionally, Judge Dancks observed that, "According to [Plaintiff], the decision to revoke his good time credits was repeatedly affirmed—first by Deputy Superintendent of Programs T. Kozak, then by Superintendent of Midstate Correctional William Fennessy, and finally by Deputy Commissioner of Programs Jeff McKoy and Acting Commissioner of the Department of Corrections and Community Supervision Anthony J. Annucci. [Plaintiff] advances no allegations about how the T.A.C. hearing—or any subsequent determination—was procedurally deficient." Id. (citations omitted).

Next, Judge Dancks addressed Plaintiff's substantive due process claim. Judge Dancks concluded that Plaintiff failed to show how Defendants' decisions were arbitrary or irrational. Specifically, Judge Dancks stated, "Nor does [Plaintiff] advance any factual allegations that indicate how or why these decisions [by Defendants] were arbitrary or irrational." Id. As a result, Judge Dancks recommended dismissing Plaintiff's Fourteenth Amendment due process claims as well.

### III.    STANDARD OF REVIEW

"Rule 72 of the Federal Rules of Civil Procedure and Title 28 United States Code Section 636 govern the review of decisions rendered by Magistrate Judges." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 405 (S.D.N.Y. 2002); see also 28 U.S.C. § 636; Fed. R. Civ. P. 72. Review of decisions rendered by Magistrate Judges are also governed by the Local Rules. See L.R. 72.1. As 28 U.S.C. § 636 states:

3

> Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate [judge]. The judge may also receive further evidence or recommit the matter to the magistrate [judge] with instructions.

28 U.S.C. § 636(b)(1). When written objections are filed and the district court conducts a de novo review, that "*de novo* determination does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, 191 F. Supp. 2d at 406 (emphasis in original); see also 12 Wright & Miller, Fed. Prac. & Proc. Civ. § 3070.2 (3rd ed.) (2022) ("[T]he judge to whom the objection is made must review the record and magistrate's recommendations, and must make a de novo determination of the facts and legal conclusions, receiving additional evidence and rehearing witnesses at his or her discretion. The district judge must not be a rubber stamp." (footnote omitted)).

"The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." New York City Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

"The objections of parties appearing pro se are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest.'" DiPilato, 662 F. Supp. 2d at 340 (emphasis in original) (quoting Milano v. Astrue, No. 05-CV-6527, 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008)). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." DiPilato, 662 F. Supp. 2d at 340 (emphasis in original) (quoting Pinkney v. Progressive Home Health Servs., No. 06-CV-5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)).

## IV. DISCUSSION

After the Amended Report-Recommendation was issued on June 1, 2022, see Am. R&R, Plaintiff filed his Objections to the Amended Report-Recommendation on July 15, 2022. Dkt. No. 35. Plaintiff objected to the Amended Report-Recommendation's findings on all of his constitutional claims. For the purpose of reviewing the Amended Report-Recommendation, the Court will undertake a de novo determination of Plaintiff's Objections. Given Plaintiff's pro se status, the Court is obligated to construe the allegations in the Amended Complaint with the utmost leniency. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

### A. Fifth Amendment Self-Incrimination Claim

Plaintiff objected to the Amended Report-Recommendation's findings regarding his Fifth Amendment Claim. In particular, Plaintiff states, "Defendants compelled [me] to give incriminating statements by threatening to remove [me] from the SOCTP program (the program), rescind [my] good-time credits, and extend [my] incarceration if [I] asserted [my] right against

5

self-incrimination.'"[1] Objs. at 4. Plaintiff argues, "as clearly proven and evidence, as per all documentary evidence and information submitted therewith my 'opposition to Defendants' motion to dismiss the amended complaint,['] it is an inarguable fact, not a mere claim, that the Defendants indeed rescinded my good-time, and conditional release, and extended my incarceration, for no other reason than upon my completion of the program." Id. Thus, Plaintiff's first objection focuses on Judge Dancks's recommendation to grant Defendants' motion to dismiss concerning Plaintiff's Fifth Amendment self-incrimination claim. As such, the Court will conduct a de novo review of this specific portion of the Amended Report-Recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that

---

[1] Plaintiff also raises a claim arising under the Eighth Amendment's cruel and unusual punishment prohibition. See Objs. at 4. However, the Court has already dismissed that claim: "Even liberally construed, Plaintiff's Complaint does not allege that he was subjected to cruel and unusual punishment under the Eighth Amendment. Instead, the primary thrust of Plaintiff's Complaint is that, by mandating he take responsibility for the underlying crimes of which he was convicted while enrolled in the SOCTP, Defendants forced him to violate his right against self incrimination under the Fifth Amendment and/or that they violated his substantive due process rights under the Fifth and Fourteenth Amendments . . . the Court has construed Plaintiff's Complaint to assert claims arising under only the Fifth and Fourteenth Amendments." See White v. Mielnicki, No. 21-CV-0791, 2021 WL 5410170, at *2 n.2 (N.D.N.Y. Nov. 19, 2021). Dkt. No. 4. Thus, the Court need not address that claim.

is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

The Court must determine whether it should accept, reject, or modify the Magistrate Judge's recommendation to grant Defendants' Motion to dismiss with respect to Plaintiff's Fifth Amendment self-incrimination claim against Defendants.

The Fifth Amendment of the Constitution protects individuals from compelled self-incrimination. See U.S. Const. amend. V. "The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).

The Magistrate Judge found that, "Absent an allegation that [Plaintiff's] compelled statements were used against him in a criminal case, [Plaintiff] has failed to state a claim for a violation of his right to be free from compelled self-incrimination." Am. R&R at 8. The Court respectfully disagrees with the standard articulated by the Magistrate Judge. The Amended

Report-Recommendation relied on the Supreme Court's plurality opinion in Chavez v. Martinez, 538 U.S. 760, 772 (2003). There, the Supreme Court rejected a compelled self-incrimination claim that did not occur in the prison context. The Court rejected the claim because the petitioner was "never made to be a witness against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against him in a criminal case." Id. at 767. However, given the factual similarities to McKune v. Lile, 536 U.S. 24, 36 (2002) (plurality opinion)—which also involved a prisoner raising a Fifth Amendment claim in the context of a sex offender program—the Court concludes that the Fifth Amendment principles from McKune control the outcome here.

"A sex-offender treatment program that requires disclosure of criminal conduct without guaranteeing immunity does not violate the Fifth Amendment's Self-Incrimination Clause unless the consequences for non-disclosure compel the prisoner to make self-incriminating statements." Krull v. Oey, 805 F. App'x 73, 75 (2d Cir. 2020) (quoting McKune, 536 U.S. at 36 (plurality opinion)). "[T]he Supreme Court in [McKune] was unable to reach a conclusive decision 'on the question of what standard to apply when evaluating compulsion for the purposes of the Fifth Amendment privilege against self-incrimination in a prison setting.'" Donhauser v. Goord, 314 F. Supp. 2d 119 (N.D.N.Y. 2004) (quoting United States v. Jones, 299 F.3d 103, 111 n.2 (2d Cir. 2002)). "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" Donhauser, 314 F. at 126 (quoting Marks v. United States, 430 U.S. 188, 193 (1977) (citations omitted)). "The penalties potentially faced in these [prison] cases—longer incarceration and execution—are far greater than those we have already held to constitute unconstitutional compulsion in the [death]

8

penalty cases. Indeed, the imposition of such outcomes as a penalty for refusing to incriminate oneself would surely implicate a 'liberty interest.'" McKune, 536 U.S at 52 (O'Connor, J., concurring).

In McKune, the Supreme Court considered whether a Kansas state prison program that required convicted sex offenders to admit their previous crimes resulted in unconstitutional compelled self-incrimination. McKune, 536 U.S. at 30. The program specifically required participants to "discuss and accept responsibility for the crime for which they have been sentenced," and "complete a sexual history form, which details all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses." Id. Prisoners who declined to participate in the program suffered consequences including being transferred to a harsher correctional facility and loss of various prison privileges. Id. The plurality held that the program did not violate the Fifth Amendment's prohibition against self-incrimination. It observed, "[a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not violate the privilege against compelled self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life." Id. at 37-38.

However, the opinion's reasoning garnered the support of only four Justices. Justice O'Connor concurred only in the judgment, and on narrow grounds. Justice O'Connor did not join the plurality's "atypical and significant hardship" legal standard, and merely agreed that the particular consequences in that case—transfer to another prison facility or loss of certain prison privileges—failed to constitute a Fifth Amendment violation. McKune, 536 U.S. at 48 (O'Connor, J., concurring). Importantly, Justice O'Connor considered a longer term of

9

incarceration an impermissible penalty in the Fifth Amendment prison context. McKune, 536 U.S. at 52. ("The penalties potentially faced in these cases—longer incarceration and execution—are far greater than those we have already held to constitute unconstitutional compulsion in the penalty cases. Indeed, the imposition of such outcomes as a penalty for refusing to incriminate oneself would surely implicate a 'liberty interest.'"). The plurality made a similar distinction by suggesting that a longer term of incarceration may be impermissible under the Fifth Amendment: "[Petitioner's] decision not to participate . . . did not extend his term of incarceration. Nor did his decision affect his eligibility for good-time credits or parole." McKune, 536 U.S. at 38 (plurality opinion). Notably, the use of incriminating statements in a subsequent criminal proceeding was not a prerequisite to finding a Fifth Amendment violation in the prison context.

Another court in this District has previously found that the sort of sex offender program at issue here, affecting good time credits and extending incarceration, violated the Fifth Amendment's prohibition against self-incrimination. See Donhauser v. Goord, 314 F. Supp. 2d 119 (N.D.N.Y. 2004). In Donhauser, the court evaluated a similar sex offender prison program that mandated inmate participation; refusal to participate resulted in loss of good time credits and possible future prosecution. Id. at 121. In that case, the court distinguished the lesser penalties the petitioner endured in McKune—which resulted only in a loss of prison privileges and transfer to another correctional facility—from the penalties the plaintiff would have faced, including a longer incarceration sentence. The court stated that, "The loss of good time credits in the first instance, as plaintiff here faced, would change the fact of incarceration to the extent such credits impact the length of incarceration. Therefore, the consequences faced by plaintiff for his invocation of the privilege against self-incrimination were serious and potent." Id. at 132. The

Seventh Circuit found similarly regarding an Indiana state sex offender prison treatment program. See Lacy v. Butts, 922 F.3d 371 (7th Cir. 2019). "The decision to decline participation in [the program] is not merely a trigger for a later stage in which the state takes a more holistic view of an inmate's progress toward rehabilitation. Instead, a prisoner's choice to invoke his privilege against self-incrimination is the direct cause of his loss of credits—credits that otherwise would be statutorily guaranteed (assuming no independent reason to revoke them). Neither the plurality nor the concurring opinions in [McKune] support such a system." Id. at 378-79 (citations omitted).

Other courts in this Circuit have come out the other way. Those courts found that a prisoner's loss of good time credits for failing to admit past wrongdoings in a sex offender treatment program did not constitute a violation of the Fifth Amendment. See, e.g., Adams v. Annucci, No. 17-CV-3794, 2018 WL 4608216 (S.D.N.Y. Sept. 25, 2018); Sayles v. Fischer, No. 08-CV-0747, 2011 WL 1199834 (W.D.N.Y. Mar. 29, 2011); Fifield v. Eaton, 669 F. Supp. 2d 294, 298 (W.D.N.Y. 2009).

The Second Circuit declined to take a definitive position on this question until recently. "As Justice O'Connor noted in her concurrence, the Supreme Court in [McKune] was unable to reach a conclusive decision 'on the question of what standard to apply when evaluating compulsion for the purposes of the Fifth Amendment privilege against self-incrimination in a prison setting.' We need not take any position on this specific question here, and we do not." United States v. Jones, 299 F.3d 111 at n.2 (citations omitted). The Second Circuit, however, clarified that "[a] sex-offender treatment program that requires disclosure of criminal conduct without guaranteeing immunity does not violate the Fifth Amendment's Self-Incrimination

Clause unless the consequences for non-disclosure compel the prisoner to make self-incriminating statements." Krull, 805 F. App'x at 75.[2]

In this case, participating in the SOCTP required Plaintiff to "admit guilt and take responsibility" for his underlying crimes, "regardless of [his] actual innocence or guilt, or pending legal matters, such as [an] appeal." Am. Compl. at 6. At first, Plaintiff refused to participate in the SOCTP because he grew concerned that admitting his guilt would "jeopardize [his] appeal." Id. Soon after Plaintiff refused to participate, Defendants removed him from the SOCTP, rescinded his good time credits, and extended his incarceration sentence. Am. R&R at 2.

Plaintiff's exclusion from the SOCTP for refusing to admit his guilt does not constitute compelled disclosure under McKune because participation in a prison program is only a change in prison conditions. See McKune, 536 U.S at 48-49 (O'Connor, J., concurring). However, removal of Plaintiff's good time credits for declining to admit his guilt in the SOCTP amounts to compelled disclosure. Losing eligibility for good time credits is precisely what Justice O'Connor

---

[2] In a 2010 unpublished opinion, the Second Circuit found that in the qualified immunity context, conditioning the award of good time credits on one's willingness to participate in a sex offender treatment program does not *clearly* violate the Fifth Amendment under McKune. Edwards v. Goord, 362 Fed. App'x 195 (2d. Cir. 2010) (emphasis added). "All that can be said of McKune, then, is that a majority of the justices agreed that the Fifth Amendment privilege against compelled self-incrimination was not violated when prisoners faced less restrictive sanctions than [loss of good time credits] as a consequence of refusing to participate in sex offender counseling." Edwards, 362 Fed. App'x at 199 (cleaned up). The court then observed, "While the [McKune] plurality did note, in reaching its conclusion, that respondent's decision not to participate in the Kansas [sex offender treatment program] did not affect his eligibility for good-time credits or parole, the phrase 'clearly established Federal law,' as determined by the Supreme Court of the United States . . . refers to holdings, as opposed to . . . dicta." Id. (cleaned up). Here, however, Plaintiff's claim does not arise in the qualified immunity context, so he need not allege that Defendants violated clearly established federal law.

concluded would run afoul of the Fifth Amendment, and what Donhauser held is unconstitutional. See 314 F. Supp at 132.

Moreover, the consequences Plaintiff faced for non-disclosure compelled him to make incriminating statements, as prohibited by Krull. "A sex-offender treatment program that requires disclosure of criminal conduct without guaranteeing immunity does not violate the Fifth Amendment's Self-Incrimination Clause unless the consequences for non-disclosure compel the prisoner to make self-incriminating statements." See Krull, 805 F. App'x at 75.

Here, Plaintiff specifically acknowledged that he "consistently expressed [his] concern regarding the program[']s enforced practice and requirement that its participants must admit guilt regardless of actual innocence or pending legal matters such as appeal." Am. Compl. at 6-7. Plaintiff also noted, "That was such a concern because for me to comply and successfully complete the program, I would have to accept responsibility for my offense." Id.

Thus, Plaintiff was faced with two choices: refuse to participate in the SOCTP to avoid admitting past crimes, thereby suffering an automatic extension of his incarceration, or participate in the SOCTP and admit his criminal wrongdoing while he faced a pending criminal appeal. Am. R&R at 2. To avoid the consequence of a longer incarceration sentence for refusing to disclose his crimes, Plaintiff eventually "gave in to the Administration's demands" and made incriminating statements concerning the crimes for which he was convicted. See Am. Compl. at 11. The prospect of a longer sentence—which Plaintiff said resulted in admitting his past crimes—is the sort of consequence required to make out a Fifth Amendment violation under Krull. Consequently, because Plaintiff's initial non-disclosure of his crimes resulted in a consequence (i.e., forfeited good time credits and a longer incarceration sentence) which led to his compelled admission of past crimes, Plaintiff makes out a plausible Fifth Amendment self-

incrimination claim. Consistent with what Donhauser has previously held, and Supreme Court precedent regarding compelled self-incrimination claims in prisons, Defendants' motion to dismiss Plaintiff's Fifth Amendment claim is denied.

### B. Fourteenth Amendment Due Process Claims

Plaintiff also objected to the Amended Report-Recommendation's findings regarding his Fourteenth Amendment claims. See Objs. at 6-7. Specifically, Plaintiff asserts:

> I had not, in any manner, been informed of such requirement to complete the SOCTP program, as was being imposed by the Defendants', at any time prior to my meeting with the Time Allowance Committee (T.A.C.), nor is complete completion of the program a stipulated, nor standardized policy, procedure, rule, nor requirement been contractually stipulated nor had I been informed of any reason regarding cause for my appearance before the T.A.C. At any time prior to my actual appearance, my incompletion of the program, standing alone, was insufficient to substantive cause for revoking my good time credits and extending my incarceration. Thus procedurally deficient and irrational . . . therefore the revocation of my good time and extension of my incarceration, without sufficient cause nor procedure, was clearly arbitrary and capricious.

See id. Plaintiff's second objection focuses on Judge Dancks's recommendation to grant Defendants' motion to dismiss Plaintiff's Fourteenth Amendment procedural and substantive due process claims. As such, the Court will also conduct a de novo review of this specific portion of the Amended Report-Recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The Fourteenth Amendment prohibits States from depriving individuals of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. To state a violation of procedural due process under the Fourteenth Amendment, a plaintiff must plead facts establishing the following elements: (1) the existence of a property or liberty interest of which he was deprived; and (2) the deprivation of that interest with insufficient process. See Bryant v. New York State Educ. Dep't, 692 F.3d 202, 218 (2d. Cir. 2012). "By contrast, to state a claim for substantive due process a plaintiff must allege that: (1) he had a valid liberty interest and (2)

defendants infringed on that right in an arbitrary or irrational manner." Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of NY, 746 F.3d 538, 545 (2d Cir. 2014). "For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

The Magistrate Judge declined to find violations of Plaintiff's procedural or substantive due process rights. Am. R&R at 8–9. The Court agrees. Although "inmates have a liberty interest in good time credit they have already earned," Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000) (citing Wolff v. McDonnell, 418 U.S. 539, 556-57), when viewed in the light most favorable to Plaintiff, his Complaint does not indicate that revocation of his good time credits was done with insufficient process or in an arbitrary or irrational manner.

Plaintiff's procedural due process claim fails. "[W]here good time credits constitute a protected liberty interest, a decision to revoke such credits must be supported by some evidence." Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 447 (1985). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." Id. at. 455-56 (emphasis added). Here, Plaintiff concedes that he was afforded a hearing with the T.A.C. that was appealed several times before his good time credits were revoked. Am. Compl. at 7. Moreover, he fails to allege how revocation of his good time credits lacked the support of any evidence. See generally Am. Compl. Plaintiff supports his procedural due process claim with conclusory assertions including that Defendants' decision to require his participation in SOTCP was "clearly abusive," id. at 7, and made "absent sufficient reason." Id. Thus, Plaintiff has failed to plead a procedural due process claim.

Plaintiff's claim for a violation of substantive due process also fails. Plaintiff does not allege how revocation of his good time credits was done in an arbitrary or irrational way. Plaintiff's claims are supported by mere conclusory statements including the contention that Defendants' actions were "adverse to rehabilitation and treatment," Am. Compl. at 14, and his erroneous belief that "conditional release is guaranteed and constitutes mandatory release." Objs. at 7. Because Plaintiff has failed to show Defendants' actions were irrational or arbitrary, Plaintiff's substantive due process claim fails.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Amended Report-Recommendation (Dkt. No. 32) is **REJECTED** to the extent that it recommends granting Defendants' Motion to Dismiss for failure to state a claim as to Plaintiff's Fifth Amendment self-incrimination claim; and it is further

**ORDERED**, that the Amended Report-Recommendation is **APPROVED AND ADOPTED** to the extent that it recommends granting Defendants' Motion to Dismiss for failure to state a claim as to Plaintiff's Fourteenth Amendment due process claims; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   September 6, 2022
         Albany, New York

LAWRENCE E. KAHN
United States District Judge